This case involves the largest federal leasing deal in the United States in the year 2013. The Hoffman companies conceded, even though they contended strenuously during discovery that JLL was not the procuring cause. The Hoffman companies conceded at the hearing on the motion for summary judgment, despite contesting strenuously during discovery, they conceded that JLL was the procuring cause of the transaction at issue. And what is this going to yield to the Hoffman companies? $336 million over the 15-year term of the lease. The court ruled, however, that JLL was not entitled to any part of its fee, because even though JLL was properly licensed at all times, and even though the head of the Government Investor Services team that led this lease pursuit was also licensed and had been for 25 years, one member of the GIS team that was working on this lease pursuit was not licensed. Did the court rule that the contract itself was a valid contract? Yes. But then said because of public policy, the commission was not to be paid? Correct. Are you aware of any case in Virginia where there is a valid contract that's not enforced because of public policy? No, Your Honor, and that's why this is a case of first impression. And with all... There's an eight-volume appendix before the court, but our argument really relies upon three very short portions of the joint appendix. As Your Honor has pointed out, Judge Shedd, the court concluded that this was a legal contract at all times, but nonetheless, the firm should... JLL should forfeit its entire $6.6 million because of the allegedly unlicensed activities of one employee. So the issue before the court is really rather simple. Was the individual involved, Mr. Arthur Tarowski, was he a, quote, real estate salesperson, unquote, as defined by the Code of Virginia? And there is one of the realtor cases actually decided by this court, the Smithy Braden case in 1987, and it made two points, and those points are absolutely valid with respect to the inquiry before the court. The first is this. By the way, do you think it's absolutely necessary that we make that determination as to whether or not he was licensed? No, I don't. Because you... Because why? The public policy? Because he's... Even if he weren't licensed, you think you should win why? For the very... For this reason, Your Honor, the parties were in complete agreement that Mr. Tarowski did not satisfy either prong of the governing Virginia statute, which is Section 54... Well, even... Yeah, but I don't think that's Judge Schitt's question. He's saying that even if Mr. Tarowski is a salesperson within the meaning of the statute, you still have an out regarding the enforcement of the contract and the fact that it's a valid contract. So you may want to consider allocating your time and not to run out of time on your second point. Right. Well, I think the main point is this. As I was saying, the Smithy Braden case says, before holding contracts unenforceable on public policy grounds such as illegality, it is necessary to determine just what acts are forbidden. Well, Smithy Braden, there was no performance of a contract by an unlicensed agent. Isn't that correct? The out-of-state unlicensed agent performed no services. That's correct, Your Honor. But here, you've got two inquiries, factually. Did Mr. Tarowski rent or offer for rent any real estate? That's a rather easy prong for reasons I'll get into. The second and rather more nebulous prong is the, or negotiate leases thereof. That's the second prong of the statute. Well, hasn't the Virginia Supreme Court interpreted the verb to negotiate fairly broadly, to include conducting communications or conferences as a basis for agreement? That's a fairly expansive definition. Do you disagree? No. That's exactly what Massey v. Dudley says. Massey v. Dudley is rather consistent with other cases from the Supreme Court of Virginia and other states. So the question is, have the defendants admitted that JLL did not, in fact, negotiate any part of this lease? So let's take a look at the actual admissions in this case. At JA 1171 and 1172, we asked this question. Who conducted the lease negotiations? And here's what the Hoffman companies had to say. And I emphasize, these are not our words or our arguments. These are the words crafted by the lawyers representing. But that was when they were trying to get out, before the court ruled there was a valid contract. I mean, so aren't you relying on old news? Not really. No, not at all. Because this court has said in the Guinness case, you can't have it both ways. You can't play fast and loose with the facts. You can't take one factual position when it suits your interest and then try to reverse course without requesting the court's leave to withdraw the admissions. That's the key. And that didn't happen here, Your Honors. And here's what I want to draw the court's attention to, because this is rather simple. Quote, the negotiations of the NSF lease occurred after the submission of the final response. When was that? We know that date, March the 7th. Who negotiated? Mr. Hoffman, Mr. Preen. In fact, they said Mr. Preen did all of the negotiations. Ms. Vizzaccaro and Lauren Douglas, or to use the words of the interrogatory. Quote, which negotiations were conducted between officers and employees of the defendants and the GSA broker? Not Mr. Tarowski. But if there were any doubt on this issue, that doubt is absolutely eliminated by the answer to interrogatory number four of the second set of interrogatories propounded by JLL to the Hoffman companies. And you can see it for yourself at JA 1211 and 1212. Here's what the defendants said. We asked, you've claimed that JLL was not the procuring cause. Tell us why. The defendant, not JLL, provided all information in response to all requests for clarification from the government occasioned by its review of the defendant's final revised proposal. Mr. Sayers, I'm sorry to interrupt, but I'm having a little trouble following your argument. So the district court, I believe, found that Mr. Tarowski needed a salesperson's license because he was centrally involved in the activities that led to the successful bid. So you're saying that's clear error? Well, yes. It's clear error because the district court was not at liberty to make that finding because there was a judicial admission to the contrary. And let me read it, Your Honor. Again, this is the defendant's words. Why don't you get right to the point you want to make? This is the point. Quote, the defendant, not JLL, conducted all lease negotiations with the government. That's what they said. That's their judicial admission. It didn't say some. It didn't say most. It said all. And it was correct. That's exactly what happened. JLL had no direct dealings with the government, with any representative of its broker. So what service did you provide? Well, the services were provided under Section… What service did you provide is my question. So if you didn't do that, what did you do? We provided services under the government procurement section of the contract, Section 4.12 of the contract. The court may recall this was originally a sole source procurement. The NSF headquarters were formerly located in Arlington. The incumbent… I thought it was some suggestion that in this whole holistic agreement that Mr. Tarowski said, I'm the contact person, you have questions, you call me. Isn't that correct? Yes. Yeah, he walked this thing through. Right. I mean, with the expressions of interest, with all the different stages. I mean, that's why I think that it just seems to me that what you… I mean, I don't want to tell you how to make your argument, but… Go ahead and do it. No, but it seems to me that argument's a loser. Well… That Mr. Tarowski was, by any definition, acting as a real estate salesperson. And the question in this case was, did the court grasp on to public policy and refuse to enforce a valid contract? It did. Because it was later performed in part by an unlicensed agent. When, in Virginia, that hasn't been done. I mean, isn't that the real issue in this case? Yes, it is. I mean, basically, there's a case cited in the reply brief, the John Buck Company case. It's the only case we could find. It's from Illinois, and it cited this conundrum. What happens if you have a whole team working on a complicated case, and there are a hundred people who work on this? Ninety-nine of them are licensed. One of them is unlicensed. Does that result… It has nothing to do with the public policy question as I understand it. The public policy question is you start with a valid contract. And what public policy under Virginia says you don't enforce, by way of public policy, a valid contract? You didn't make any… I think, for this argument, you assume that Mr. Tarowski was an unlicensed person acting. You don't have to accept it or concede it. You don't have to concede it, but you should accept it for the purposes of argument. You keep going back to part of the team and all that. I don't really think that. You keep saying your argument is the public policy argument. But when you answer it, it seems to me you go back to he's only a one small part. He really didn't do anything. Those are two separate arguments, don't you think? I agree entirely with the court's observation that this is a question, is the contract enforceable? There's no question about that. Right. I mean, it's an enforceable contract. It's a valid contract. And the court so found, and it had to… And the court said there's a public policy. Right. And, by the way, if we assume, let's assume for a second this person was unlicensed, Mr. Tarowski. So the question becomes, we now have a valid enforceable contract, but we have somebody who had some role in that contract that wasn't licensed. So does the public policy mean the contract is not enforced? Does the public policy mean that some other sanctions should be taken in the right form by the licensing body against Mr. Tarowski? Is there any other public policy in Virginia that runs counter to what the district court said? Isn't there a public policy in Virginia that an enforceable contract between sophisticated parties ought to be enforced? Absolutely, Your Honor. And furthermore, if there were to be any consequence associated with this gentleman actually being an unlicensed real estate salesperson, that's a matter for the real estate board to take up. It could institute disciplinary proceedings. It could impose a penalty. Is there authority for the position, that position, which is actually the question? Assuming that Mr. Tarowski is not a salesperson, is there authority one way or the other for the proposition that that renders unenforceable an otherwise valid contract? No. And maybe, so then, is this governed by Virginia law? Yes. Should we certify it to the Virginia Supreme Court? And I go there with great trepidation. Not based on my experience with people who've been on that. That's certainly an avenue that would be open to the court. Wallahan v. Hughes addressed that issue, 196 Virginia 117, where it says, courts are averse to holding contracts unenforceable on the grounds of public policy unless their illegality is clear and certain. That's exactly the point, Judge Keenan. Right. So I'm saying, why would you certify that if the court has said this in Wallahan? This is an issue of first impression. If the court considers that Virginia law is unclear on this area, and we would respectfully submit to the court that it's not. But that was my question. I asked you if there was authority on this point, and you said no. I mean, you can't really have it both ways. Well, the only cases, Your Honor, where contracts have been found to be unenforceable is where they were illegal to begin with. And that's the Massey v. So your answer to my question is yes. There is Virginia law on point. The Virginia law on point is that contracts entered into by unlicensed persons with their clients are void against public policy. They're illegal. That's not what we have here. So, yes, there is clear law. The Massey line of cases. This is not the Massey line of cases. It's not. The point is that JLL was properly licensed at the time that this contract was entered. You seem to be taking it that her question to you is negative or adversarial, and I don't think it necessarily is. She's asking you, is there law on the point you're making? It's a point of information, I think, that's being sought rather than to – And what you're doing is you're telling us why other cases don't apply. Is there any other cases that support your position? I think I heard – I'm not sure what your position is. You sort of suggested certification is a good idea to one side of the court, and to the other side you said you had the law exactly right, Judge Keenan, when you read the public policy comment about enforceability. Which is it? Which is it? What's your position? Courts are averse to holding contracts void on the grounds of public policy. And that is the law of Virginia? Yes. On which you rely? Correct. And we are not aware of any case where a valid contract – where a court has held that a contract is valid, yet simultaneously unenforceable. You've reserved some time. Thank you very much, Your Honor. Mr. Adams, glad to hear from you, sir. Good morning, and may it please the court. My name is John Adams, and it's my privilege to represent the Hoffman Companies. This case comes down to two questions. Based on the discussion during the first argument, I will – if the panel doesn't have any questions about whether Mr. Tarowski's undisputed – Well, there may be questions about that. I don't know. I just – I'm not saying that. I'm not speaking to say that's not there. And it's not necessarily – the court doesn't necessarily concede that it is – that it was. But I think – but we were just asking questions, do we have to decide that? Well, I think you do, Your Honor, and let me tell you why. And I'm going to go right to the heart of the matter that I think the court was getting at during the first argument. If you read the Massey case, the Seminole case in Virginia, and you look at the factual background of that case, it's pretty clear that Mr. Massey possessed a license when the contract was formed. In other words, that contract was a legal contract the day it was formed. What he did was he let his license lapse, and the whole point of Massey is analyzing the question of when the conduct occurred. When he was negotiating the license, was he licensed? The court didn't say that the contract was unenforceable because when it was formed, it was wrong. It said the contract is unenforceable because once someone performs these services and they are unlicensed, the Commonwealth of Virginia doesn't enforce that contract. And that's true in the other cases that the Virginia Supreme Court has addressed the question. Well, let me see if I can articulate what I understand your argument to be, and you can tell me if I'm wrong, that Massey doesn't stand just for the proposition that illegal formation is the only concern it has. And a contract can be valid when it is entered into, but rendered unenforceable and thus, I guess, void ab initio, if later facts that later noncompliance becomes apparent. I mean, that a contract can be valid at its inception, but not necessarily valid throughout under Massey. I think you're right, Judge Duncan. I'll add one little twist. No, you can just restate the whole thing. I'm just trying to make sure I understand. I'm just trying to make sure I understand what you're arguing. Exactly. First of all, the one thing that I would add is the courts don't use the phrase void ab initio. The courts don't go back and analyze the status of the license at the time of contract. The status of the license or the status of the contract. They don't analyze the status of the license at the time of contracting. The cases analyze the status of the license at the time the person performed the service. But Massey talks about the contract itself being illegal. I'm sorry, Your Honor. I mean, it says a contract made by an unlicensed person is void and unenforceable. That's correct, Your Honor. The court does use some language. They use the language, and I'm going from memory, that not just the performance but the substance of the contract could be illegal. Oh, sorry. I'm sorry. Go ahead. But the whole thread of cases in Virginia from Massey to Hancock to state realty to Grenco, they're all saying making a distinction between an illegal contract and illegal performance. Are they not? I don't think so, Your Honor. Because if in the Seminole case in Massey, he's licensed when he makes the contract. There's nothing at the time the contract is. Why did the Virginia court then call it an illegal contract? Your Honor, I've wrestled with that myself. Okay. But the court is premising its holding on the fact that it has an illegal contract in front of it and it is not going to enforce an illegal contract. Now, you may say that the court was wrong, but that's what the court said. I think the court was right. And when you read Massey, what the court says is he possessed. Think about Massey compared to this case. There's a balance. Is your answer, and I'm just, I'm thinking, I'm wrestling with this too. Is your answer that when the contract was before the court, it was illegal? No. In that case, that goes back to my, it goes unenforceable at that time as opposed to. It's the time of enforcement. It's when the request is made for payment and someone attempts to enforce the contract. That's not what the court's saying, though, in Massey. I understand that that's what you're gleaning from Massey, but the court is saying that a contract made in violation of the statute is void, and when a plaintiff cannot establish his cause of action without relying upon an illegal contract, he cannot recover. The court calls it an illegal contract. I totally agree, Your Honor, but if you look at the facts of Massey, he is, at the time the contract is formed, he has a license. In this case, at the time the contract is formed, it's signed by Jones Lang LaSalle with someone with a license. Well, what about Hancock? Tell me about Hancock. Well, in the, okay, Your Honor, in Hancock, the question is this difference between the corporate license and the license of the actual person. Right, and the person who, the entity, the corporation that made the contract was unlicensed. Isn't that correct? That is correct. Right, and the court said that the contract was invalid. That's correct. At its inception. You agree that this contract was not invalid at its inception. So if your reading of Massey is correct, then Hancock that was decided two years later would be inconsistent, would it not? I don't think so, because when you look at the way the court in Hancock analyzed that question, it discusses two dates. It discusses the date that the license was received and the date of the performance. And then it does the same thing Massey did, Your Honor, just like this case. In Massey, the day the contract was made, a license was possessed. When the actual substance of the work was performed, there was no license, just like here. But you do acknowledge, as a predicate to Judge Keenan's question, that the contract here was valid. When it was signed? It was a valid contract in the sense that it was signed by a licensed real estate agent. I would agree with that. Now, in Hancock, it's kind of interesting, just as a matter of historical interest, you have Justice Spratley writing the opinion in Hancock, and wasn't he the author of Massey as well? And he was. I believe he was, yes. Justice Spratley was saying the same thing in Hancock that he was saying for the court in Massey. Well, Your Honor. He was saying that the court will not proceed on an illegal contract. But there's, I guess, and I know we're all wrestling with this, but if you go back to Massey, there's nothing in the Massey opinion that shows the contract was illegal at formation. He possessed a license. There was an agreement for services. The whole structure and discussion of Massey is when the services were performed. The whole case is about what did he do during the period he wasn't licensed. But not in the court's language. You're saying that was the factual context, but the court's language, unfortunately for you, talks about an illegal contract. But, Your Honor, I think what the court is doing is they're talking about enforceability of an illegal contract because the way the contract was performed. However, then, how do you explain Hancock? Because in the Hancock case, they do the exact same thing. There's no discussion in Hancock about the time of the formation of the contract, who signed the contract. It's all about the fact that when the services were performed, the company didn't possess a license. And the rule was the contract was made with the unlicensed agent, the corporation. Isn't that correct? I believe that's correct, but there's no discussion of the timing of that. The performance was by a licensed agent in Hancock. That's correct. Right. And I also think, Your Honor, if you look at the- But it was nonetheless rendered invalid because at the time of its entry, it was made by somebody who was not licensed. Isn't that correct? Your Honor, it's hard to know from the opinion because it doesn't really go into detail about the time of the contract. I think I-I do think I understand what you're saying about Massey because there's-the holding is-it seems a bit at war with itself because its holding is out of sync with the facts on which the holding is predicated. So I understand that. But let me-let me approach this slightly from another tap. Doesn't this result in an unbelievable windfall, a $6.6 million, to be precise, windfall that you have still gotten the benefit of the services for? It-it-it does not, and there-there's three reasons why, Your Honor. First of all, the Virginia Supreme Court in many of these cases- they would have to pay $6.6 million. And because of this court ruling, they don't have to pay that. That's not a windfall? No-no, Your Honor. Well, first of all, there's a dispute- I mean, are you saying it-is that a windfall or is that not a windfall? $6.6 million, if it is improperly earned, would be a windfall. But it's on a valid contract. You're agreeing it's a valid contract. No-no, Your Honor, what I said was I agree it's a valid contract when it was signed. I'm not talking about the performance. It was valid in the sense- Just go back to my question of Judge Duncan's question. She asked you, wasn't it a windfall if you were correct? And you said it's not. And I asked this question. So your client not having to pay $6.6 million that it otherwise would have had to pay, and now because of Mr. Tarowski's maybe not being licensed, they no longer have to pay that, you don't call that a windfall of $6.6 million? I absolutely agree with you, Judge Shedd. If you don't have to pay $6.6 million that you should have paid, that would be a windfall. That's not the case here. What about the fact that Mr. Sayers' point, and this really does trouble me, Mr. Adams, that, you know, Hoffman was saying all along, we did it all. JLL didn't do anything. And now you're saying Tarowski did everything, or not everything, but, you know, was fundamental. Aren't you just shape-shifting, as they would say on Star Trek? Not at all. Not at all, Your Honor. Here's why. The admissions that they cite, which, by the way, is really their only defense to the fact that Mr. Tarowski was undoubtedly negotiating a lease in this case. The admissions they cite relate to two undeniable and unremarkable facts. The first, if you read those responses, deal with the fact that it was actually the Hoffman company that owned the property. So, yes, they are the company that, quote, offered it for lease because they're the owner, and they're very clear about that. The second group of admissions relate to the fact that after years of work by Mr. Tarowski, authoring the expressions of interest, identifying the contact, smoothing out differences in the language of the Massey case, because of a known conflict, at the very last set of negotiations, the government said, we don't want Jones, Lange, LaSalle to be involved in those, and we want to negotiate with you. That is absolutely squarely controlled by Massey. In a general sense of contract law, didn't your client get what your client contract wanted in result of the lease arrangement? No, Your Honor, and this goes to the windfall point. Think about it. Your client didn't want $336 million in a leasing arrangement? Your Honor. Your client was surprised when you got that? You didn't want that? Of course we wanted that, Your Honor. I thought so. You know, you asked about a windfall, and you said no, and then we took four or five minutes to get you to say, you know, come to think of it, that is a windfall. Well, no, Your Honor. But I'm asking, did your client get what it wanted when it approached this agency? It did not, Your Honor. Let me explain why. We are here in court for a reason, because we got an unlicensed agent. No. That's not the question, or at least it wasn't my question. Not my question either. The question is, did your client, for what reason? Answer this briefly for me, if you can. For what reason did they approach that brokerage? To get what? To obtain leases. Did they get leases? Yes, sir. Did they get $336 million or some such number like that? Yes, sir. So they got what they wanted from the lease contract arrangement. I understand you have another argument about how they got it, but you got what you wanted, correct? Yes, sir. You're not happy with somehow what they did to help you get that, right? Correct. You willing to give that lease back? No, we're not going to give the lease back. I'm just asking. So you got what you wanted. So why, two sophisticated parties, why shouldn't the court believe? We can argue about Virginia law, and that's what we have to apply. Why shouldn't we believe that you should be made? There's nothing against public policy to make you pay them their end of the bargain when you got your end of the bargain as to the overall scope of the contract. There absolutely is, Your Honor. Please let me explain. I think with all your questions, I can wrap them up and give you an answer here. Okay, here's what we didn't get, right? We had a deal with a brokerage company, and it was far from clear. And the reason this whole dispute exists is it's not clear what we owed as a commission, as payment. So we didn't get exactly what we bargained for, Your Honor. So you think you owe less than the number in the? Absolutely, Your Honor. This whole dispute is because they said they're entitled to 2%. There's competing evidence in the record about what was. Didn't the court resolve the contract matter earlier in the litigation? It resolved a separate contract issue about whether the contract was still. It expired. Whether it expired. It has never addressed the underlying factual dispute. If you could agree on the number, then you would say we'll pay it. What I will say. You're saying there's a dispute about that. I'm just asking. Your position is whatever they say 4%, 2%, you say 1%, 2%. You're willing to pay your percentage? We paid. We have in the second EOI that went to the government, it's documented a $1 million flat fee. We tendered the first installment of a half million. They refused it. Well, that's the argument for you to make to the district court if the case is remanded, isn't it? I mean, you have that option. But the problem, and I'd like you to address, Mr. Adams, because I know you've been around and certainly have a lot of experience. Virginia is hostile, absolutely hostile to public policy being used to invalidate contracts. And I think it was put best in the Wallahan v. Hughes case where the court says that public policy has its place in the law, yet the will of the wisp varies and changes with the interests, habits, needs, sentiments, and fashions of the day. And therefore, courts are adverse to holding contracts unenforceable on the grounds of public policy unless their illegality is clear and certain. Virginia doesn't buy into taking public policy as a deus ex machina to invalidate an otherwise valid contract. And if, as you've answered, Judge Shedd, there is a valid contract, you're only disputing the amount. How can you then tell us here today that public policy prevails in light of Virginia's clear and unambiguous hostility to using public policy to invalidate an otherwise valid contract? Because, Your Honor, that case involves, if I recall correctly, a judge-made rule. Let me be clear on this. This statute has been in place for almost 100 years. The Virginia Supreme Court has been interpreting it. The public policy, it's a shame that that word has grown into this case. It's established law. But that's what the court called it. The court did. But, Your Honor, if you just look at the case law from Massey on, the facts are the same as the facts here. And those are these. The contract is valid the day it's signed in the sense that it is signed by a licensed agent. That's true here. I'm sorry. I don't mean to interrupt you. But don't we have here Judge Tenga saying that an otherwise valid contract is unenforceable because of public policy? Yes, because of the law of Virginia, which is, with all due respect, abundantly clear here. From Massey forward, when the performance is done by an unlicensed party, the contract is unenforceable. And that's exactly the facts in Massey, and those are exactly the facts here. Then why did Hancock focus on the making of the contract? Why did Justice Spratley use the exact same language that he's used in Massey and invalidate the contract at the time it was made, even though a licensed agent performed it? Because the public policy that was violated, if it's public, the law that was violated – No, the contract was illegal. No, the law that was – Because the corporation wasn't licensed. The law that was violated in that case was the performance of the duties by an unlicensed brokerage party. No, not in Hancock. I think when you read the dates that the court discussed – In Hancock, the corporation that entered into the contract was unlicensed, but the performance of the contract was by a licensed person, was it not? But in Virginia, for a person to work for a corporation, they both have to have licenses. And that turns to another point when you talk about public policy. The position Jones, Lang, LaSalle wants this court to adopt would allow large real estate corporations like themselves to hire a front man who has a license to go out and gather up clients, sign them up on a contract – But why – what incentive would they have to do that and buy themselves more litigation? I was curious, though, that both parties acknowledged that the standard form agreement Tarowski signed required that he obtain a license. And apparently he never did, but that agreement isn't in the record. I believe it is in the record, Your Honor. But you're correct. He did have to – he was required by his employment to get a license. He then engaged in incredibly meaningful negotiation with the government. For which he will no longer receive any money. For which he will no longer receive any commission. Well, it's actually – if you look in the record, Your Honor, he does receive a bonus. In fact, the vast majority of his compensation is through a bonus. So he did lots of meaningful things for this contract, but yet Hoffman did everything according to your judicial admission. No, I don't think so, Your Honor. Our judicial admissions are very specific. All we did was negotiate the very last details, which the Massey court absolutely allows, because they were, because of a conflict, precluded from attending those negotiations. JLL never let its contract lapse at all. I mean, it's licensed. I mean, JLL was licensed throughout this proceeding, right? I'm sure the company was licensed. This is all about whether Hoffman can slide out of the agreement because Tarowski wasn't licensed. Isn't that correct? Oh, I don't – absolutely not, Your Honor. The law requires, as a precondition of Jones-Lang-LaSalle's license, that all people who work for them who are negotiating these leases have license. There is interdependence between those two. So that you are here representing the public interest of the state of Virginia. It just so happens that your client walks away with some $6 million. And, Your Honor, the Virginia Supreme Court has said it many times. We understand that when you don't enforce these contracts, there could be – No, no, I didn't ask you all that. I said that's your position. You're here to be sure that your take on the state Supreme Court decisions and that line of cases is clear. You're here to enforce that. And for that, your client, who receives services, doesn't pay for the services but is awarded $6 million for doing a good job protecting public policy? We don't concede for a moment that's the underlying dispute is what we owe. We don't concede we owed $6 million, Your Honor. So whatever you owe. Correct. Okay. All right. Thank you very much. Thank you. Mr. Sears, you've reserved some time. I won't take up too much of the Court's time. We won't argue with you about that. And I'll try not to stumble over my own feet. Well, Mr. Sears, if you could start off. Mr. Adams has a pretty interesting take on Massey, does he not? How would you rebut that? Because I think that's sort of square one for the second-issue analysis, isn't it? As Your Honor observed, Justice Spratley in both Massey and Hancock Company found that the contracts at issue in that case were illegal when made because of a lack of licensure. The district court in this case found, and I've just heard a concession in before Your Honor, that this contract was legal. So this isn't Massey. But didn't the same circumstances that would create illegality exist in this contract as existed in Massey? No, Your Honor. And here's why. Wasn't Mr. Tarowski not licensed at the time the relevant contract was entered into? Mr. Tarowski didn't even work for JLL at the time that the contract was entered into. That's right. I'm sorry. I'm sorry. And so it doesn't really ‑‑ I'm reading Massey, and I find it to be slightly more ambivalent because it would appear that there is no consequence in terms of the contract here for Mr. Tarowski's not obtaining a license, even though he was required to do so. Well, let's examine that, Your Honor, because that's interestingly phrased. I mean, basically, as the court knows, our position is that Mr. Tarowski was not required to be licensed because he did not ‑‑ All right. Let's move on because I don't think you're getting much traction with that. Let's assume that he was required to be licensed at the time that he did what he did. If, indeed, he was unlicensed, the public policy in the Commonwealth is actually outlined in the statutes that create the Real Estate Board and endow it with its powers. It has the ability to initiate disciplinary proceedings. But that possibility was addressed in Massey as well, and Massey didn't buy it. Massey said, you know, that those regulations are designed to protect the business. The policy is designed to protect the public. So there are two sets of interests at work here. Well, Massey involved a contract that was found to be illegal at the time of its formation. Yes, I understand that factual difference. The problem I'm having is you have the same circumstance that the person who came to your company and worked to negotiate the transaction was unlicensed. So from the beginning of, is there no impact from the beginning of his association as a salesperson unlicensed with this transaction? Because according to Massey, there can be no compensation for services in spite of the fact that the license has become secured before the commission is due. It clearly places a great deal of emphasis on the protection of the public that is embodied in the requirement of the license. And you're saying it has no consequence at all. Well, here's the reason. In Massey, Massey was the only person who was performing the services. Please answer my question in the context of, my question is in the context of this case. There is no consequence at all from the fact that you authorized an unlicensed individual to work on this agreement. Let me answer your question, Your Honor. Again, Massey involved a situation which was a contract that was illegal ab initio. And the person that was seeking the commission... Is the answer to my question no? The answer to your question, Your Honor, is if it's true that Mr. Massey, Mr. Tarowski, was an unlicensed agent, which we dispute because of the admissions. But if it's true, then the public policy of the Commonwealth confers upon the Real Estate Board the power to initiate investigations and to impose a wide variety of sanctions. The automatic all or nothing forfeiture of a commission is not required. Simply, the licensing requirement has no applicability or consequences in this circumstance. It does not. And that's our position. Thank you. Thank you very much. We'll adjourn court, step down and greet counsel. This honorable court stands adjourned until tomorrow morning at 8.30. God save the United States and this honorable court.
judges: Dennis W. Shedd, Allyson K. Duncan, Barbara Milano Keenan